UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Marc LaMarca, et al., | ) | CASE NO. 1:12 CV 664 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE DAVID DOWD |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

This case is before the Court on defendant United States' motion to dismiss plaintiffs' complaint seeking redress under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq*., "for actions undertaken by agents and employees of the United States Government all acting within the scope of their offices and employment, under circumstances where the Defendant United States of America, if a private person, would be liable to the Plaintiffs in accordance with the laws of the State of Ohio."  ECF 1.  For the reasons that follow, defendant United States of America's motion to dismiss (ECF 25) is GRANTED.

PLAINTIFFS' COMPLAINT

The plaintiffs in this case are Marc LaMarca (LaMarca), Beauty Enterprises, Inc. dba Vogue Beauty Academy (Vogue), and Charmayne, Inc. dba Charmayne Beauty Academy (Charmayne).  Plaintiffs Vogue and Charmayne (collectively, the Schools) are privately owned for-profit corporations offering diplomas

1

in basic cosmetology and cosmetology management.  Plaintiff LaMarca is a 50% owner of the Schools and Senior Vice President/Chief Executive Officer of the Schools.

The Schools were classified by the United States Department of Education (DOE) as vocational trade schools and participated in the DOE's Pell Grant program pursuant to a Program Participation Agreement (PPA).[1]  Numerous regulations govern both the DOE and schools participating in the DOE's Pell Grant program pursuant to Title IV of the Higher Education Act, including recording-keeping requirements and procedures for addressing problems that arise in connection with a school's participation in the Pell Grant program.[2]

The federal Pell Grant program provides need-based grants to students meeting the program's income requirements.  Pell Grant funds for students in the program are sent directly to participating schools.  In this case, when the Schools received Pell Grant funds for students participating in the Pell Grant program, the funds were credited to the students' accounts to pay for tuition and fees.

According to plaintiffs' complaint, the Schools began participating in the Pell Grant program in 1975.  Plaintiffs allege that the Schools failed to receive from the DOE approximately $600,000 in Pell Grant tuition funds for the 1998-1999 and 1999-2000 academic years due to the DOE's failure to timely process student Pell Grant applications, pay Pell Grant funds for eligible students, and supply the Schools with the DOE's Individual Student Aid Report (ISAR) forms needed by the Schools to support continued eligibility of students for Pell Grant funds.  Plaintiffs also claim that the DOE

---

[1] Title IV of the Higher Education Act of 1965 (HEA) permits institutions of higher education to participate in federal student financial aid programs, including the Federal Pell Grant program.

2

owed the Schools over $500,000 in Pell Grant tuition funds for the first half of the 2003-2004 academic year. Plaintiffs allege that as a consequence of the DOE's failure to pay the Pell Grant funds, the Schools experienced a cash flow problem.

Under the Pell Grant program, participating schools are required to refund Pell Grant funds paid by the DOE for students who drop out before completing their course of study or who are later determined ineligible for Pell Grant assistance. Plaintiffs allege that due to the Schools' cash flow problem caused by the DOE's failure to pay Pell Grant funds which plaintiffs' claim were due, refunds owed to the DOE by the Schools accumulated unpaid. The sum owed by the Schools to the DOE in Pell Grant refunds is estimated to be over $400,000, but the exact sum remains to be determined. Plaintiffs allege in their complaint that pursuant to § 490(d)(7) of the HEA, as amended in 1992, Title 20 U.S.C. § 1094(c)(7), the Schools were entitled to offset the refunds owed by the Schools against the Pell Grant funds the DOE failed to pay the Schools. ECF 1.

According to the complaint, "[i]n an effort to improve the School's cash flow concerns," LaMarca contacted the Schools accrediting agency (the National Accreditation Commission of Cosmetology Schools (NACCAS)) a request to convert the Schools from a "clock hour program" to a "semester credit hour program." ECF 1. As stated in plaintiffs' complaint, "[a] clock hour program requires students to record their actual hours in class in order to receive Pell Grant monies. If actual time or satisfactory progress is not logged or achieved on a timely basis . . . payment is to be refunded to the USDOE. In a credit hour program, the student enrolls and does not have to show actual time in class; the only requirement is to pass the class . . . A refund ramification is less

---

[2] 20 U.S.C. §§ 1077 *et seq.*, and 34 C.R.F. §§ 600 *et seq.*

3

likely in a credit hour program." ECF 1, par. 42 and 43. The NACCAS approved LaMarca's request to convert the Schools to a credit hour program in June 2003.

Plaintiffs' complaint alleges that LaMarca believed that his conversion request would meet with resistance from the Region V DOE office in Chicago. Plaintiffs allege that Douglas Parrott, the DOE Region V Case Director, was personally opposed to credit hour programs for vocational trade schools and that "Parrott privately stated that he would come down hard on any Cosmetology schools attempting to convert to a credit hour school." ECF 1, par. 44, 46 and 47. Plaintiffs claim that, "upon information and belief," Parrot retaliated against the Schools by conspiring with Senior Institutional Reviewer and DOE Team Leader Earl Flurkey to force the Schools to close. ECF 1, par. 48.

According to plaintiffs, this retaliation took the form of a program review inspection of the Schools in June 2003 and placement of the Schools on a "reimbursement format," which meant that Pell Grant monies were paid to the Schools *after* eligible students completed their coursework rather than in advance. The reason cited by Parrott in his Reimbursement Notification to the Schools was the Schools' failure to make required refunds for withdrawn students during the 2001-2002 and 2002-2003 academic years, and that the DOE had the right to set off refunds owed by the Schools to the DOE against funds owed by the DOE to the Schools. ECF 1, p. 51.

After the DOE placed the Schools on a reimbursement format, LaMarca, in his capacity as Chief Executive Officer of the Schools, began a "letter writing campaign" to President Bush, Senator Voinovich, Senator DeWine, Governor Taft, Congresswoman Stephanie Tubbs-Jones, DOE Secretary Rod Paige, and other DOE

4

officials chronicling the Schools Pell Grant history from 1998 forward, the program review, and the placement of the Schools on a reimbursement format. LaMarca's letter claimed that Parrott was "punishing" the Schools for converting to a credit hour program. ECF 1, par. 56.

In July 2003, the Schools made their first request for reimbursement of Pell Grant funds for students who began attending classes in June 2003 for the 2003-2004 school year. The DOE denied the Schools' request for reimbursement of Pell Grant funds for the 2003-2004 school year until the Schools "have adequately demonstrated that they have returned all of the required Title IV refunds from July 1, 2000 to present." ECF 1, par. 52. Plaintiffs claim that they were entitled to receive in excess of $500,000 in Pell Grant funds for June 2003 to December 2003. The Schools closed in December 2003. ECF 1, par. 53.

As part of the Schools' July 2003 reimbursement request for the 2003-2004 school year, LaMarca signed a CEO Certification Statement stating that "all Title IV refunds had been made as required by federal regulations." ECF 1, p. 59. According to plaintiffs, LaMarca was advised by a "third party reimbursement specialist" that the certification applied only to unpaid refunds for the 2003-2004 year academic year, and that since the 2003-2004 school year had just begun, no reimbursements were due. Plaintiffs allege that the certification applied only to the academic year for which the Pell Grant fund application was made, and allege that Parrott and Flurkey were aware that LaMarca's certification applied only to the 2003-2004 year. Plaintiffs claim that Parrott and Flurkey nevertheless determined that LaMarca's certification statement was "false," and contacted the DOE's Office of Inspector General (OIG) to begin a criminal

5

investigation into LaMarca's handling of the School's refunds and the "false" certification. ECF 1, par. 62, 63. DOE-OIG agents Gary Pawlak and Jon Greenblatt were involved in the investigation.

On September 29, 2003, the DOE issued its Preliminary Program Review (PPR) based on the June 2003 inspection. According to the complaint, the PPR addressed the Schools' unpaid refunds, but did not address any offset of unpaid refunds against Pell Grant funds to which plaintiffs claim they are entitled. ECF 1, par. 68, 69. As stated by plaintiffs in their third amended complaint at paragraph 69, the issuance of the PPR set in motion the due process procedures available to the Schools pursuant to subpart H of the HEA for an administrative evidentiary hearing and findings by an impartial hearing officer. The HEA required the Schools to reply to the PPR in 30 days. ECF 1, par. 70, 71. The School have not replied to the PPR, on the grounds that without the Schools' documents which were seized as discussed, *infra*, they are unable to respond to the PPR.

On October 2, 3003, DOE-OIG agents Greenblatt and Pawlak, who were conducting the criminal investigation into LaMarca's handling of the Schools' Pell Grant refunds to the DOE, obtained federal search warrants and seized the Schools records, files, computers, and applications for Pell Grant monies that were not yet processed. Plaintiffs allege that the affidavits upon with the search warrants were issued were incomplete and contained false and misleading information about LaMarca's certification statement regarding the Schools' refunds and the offsets to which the Schools claim that they are entitled.

6

On October 9, 2013, the NACCAS scheduled a routine accreditation review of the Schools and sought access to the Schools' records for that review. However, the records were being held by the DOE-OIG, and the NACCAS's request to access the Schools' records was denied.

In connection with the Schools' response to the PPR, LaMarca advised the DOE that without their records, the Schools would be unable to review student withdrawals during the 2000-2001 and 2001-2002 academic years, perform refund calculations, and respond to the PPR. Both LaMarca and the DOE estimated the refunds to be approximately $430,000. ECF 1, par. 82, 83. The DOE-OIG did not return the Schools' records or provide access.

On January 17, 2007, LaMarca was charged with a four-count indictment relating to his conduct in connection with the Schools failure to pay refunds to the DOE. Plaintiffs allege that when Pawlak and Greenblatt testified before the Grand Jury to obtain the indictment, they did not explain to the Grand Jury that the Schools could offset refunds against unpaid Pell Grant monies from the DOE or that there was an administrative process available for determining those calculations. LaMarca's criminal case in the Northern District of Ohio, Case No. 1:07 CR 38, proceeded to a jury trial on September 29, 2008, and resulted in an acquittal.

Plaintiffs' third amended complaint asserts that on November 4, 2009, about half of the records seized by the DOE-OIG were returned. However, plaintiffs claim that not all the documents were returned, and those that were returned "are in total disarray." ECF 1, par. 99.

7

Based on the facts alleged in the complaint, plaintiffs claim that: Count 1 – Pawlak and Greenblatt provided false information and omitted exonerating information to secure a search warrant and seize the School's records, and intentionally interfered with the Schools' possession of their records, constituting a trespass to chattels under Ohio law, and that the United States is liable for their acts pursuant to 28 U.S.C. § 2680(h); Count 2 – Pawlak and Greenblatt intentionally interfered with the Schools' possession of their records by seizing the records and refusing to return the records for a number of years, and have yet to return all the records, constituting conversion under Ohio law; Count 3 – Parrott and Flurkey intentionally ignored plaintiffs' alleged right to set-off refunds against Pell Grant reimbursements for each academic year, knowingly provided false information and omitted exonerating information to seize the Schools' records, and secured an indictment of LaMarca "despite inadequate probable cause," constituting malicious prosecution under Ohio Law; Count 4 - Parrott and Flurkey intentionally ignored plaintiffs' claimed right to set-off refunds against Pell Grant reimbursements for each academic year, knowingly and maliciously provided false information, and omitted exonerating information to seize the Schools' records and secure an indictment of LaMarca, all in retaliation for the Schools' conversion to a credit hour program and for LaMarca's complaints to government officials regarding the DOE's handling of the Schools participation in the Pell Grant program, constituting retaliatory prosecution under Ohio law; and Count 5 – the above-described actions of Parrott, Flurkey, Greenblatt, and Pawlack were extreme and outrageous and resulted in the intentional infliction of emotional distress upon LaMarca, in violation of Ohio law.

ADMINISTRATIVE CLAIM WITH THE DEPARTMENT OF EDUCATION

As will be discussed in greater detail below, before a Federal Tort Claims Act claim can be filed in federal court, an administrative claim must first be filed with the federal agency at issue. This requirement is a jurisdictional prerequisite to bringing a federal FTCA action.

*The Schools' Administrative Claim with the DOE*

On July 29, 2011, the Schools presented a form 95 administrative tort claim dated July 28, 2011 to the United States Department of Education. ECF 25-2. The Schools' administrative claim presented to the DOE alleges trespass to chattels and conversion against Flurkey, Greenblatt, Pawlak and Parrott in connection with seizure of the Schools' records on October 2, 2003, and failure to return those records. *Id*. On June 1, 2012, the DOE reissued its determination letter[3] denying the School's administrative claim because the claim for conversion and trespass to chattels was filed nearly eight years after the date the claims accrued, and because the claims were specifically excepted from coverage under the FTCA as follows: a) claims based on an act or omission of an employee of the government exercising due care in the execution of a statute or regulation; b) claims based on the exercise or performance or failure to exercise a discretionary function or duty; and c) claims arising in respect of detention of property. See ECF 25-2 (citing 28 U.S.C. §§ 2680(a) and (c)).

---

[3] The original determination letter was issued on May 11, 2012 and sent to counsel at the address provided with the claim, but was returned to the DOE as undeliverable.

9

*LaMarca's Administrative Claim with the DOE*

While there is no dispute among the parties that the Schools filed an administrative tort claim, the DOE asserts that no administrative claim has been filed by LaMarca. LaMarca claims that he sent an administrative claim to the DOE on the same day as the Schools, however, the DOE has no record of receipt of any administrative tort claim presented by plaintiff LaMarca. ECF 25-2. Tracey Sasser, the custodian of the DOE's records relating to FTCA claims filed against the DOE, avers that a search of DOE's FTCA claim files was conducted, but no record of a claim filed by Marc LaMarca was located. *Id*. at par. 4.

LaMarca's and the Schools' claims were sent in separate packages by FedEx on both July 28 and July 29, 2011. The claims were sent and resent because FedEx notified counsel for plaintiffs that one of the packages sent on July 28th was lost or delayed.

With respect to the claims packages resent by FedEx on July 29th, DOE records reflect receipt of only one of the packages on August 1, 2011. ECF 27-1. DOE records further reflect that this package was forwarded to and received by the DOE's Federal Student Aid office, on August 1, 2011. However, Ms. Sasser avers that she is unable to locate the package or verify its contents. Neither Ms. Sasser nor LaMarca are able to determine if the package that was received by the DOE on August 1, 2011 contained the Schools' claim or LaMarca's claim sent to the DOE on July 29, 2011.[4]

---

[4] The Schools' claim was received on July 29, 2011. The Schools' unsigned claim form attached to the complaint, and the Schools' signed claim form received by the DOE, are not the same. See ECF 1-3 and

10

DEFENDANT'S MOTION TO DISMISS

Defendant United States of America moves to dismiss plaintiffs' Federal Tort Claims Act complaint pursuant to both Rule 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim) of the Federal Rules of Civil Procedure. ECF 25. Plaintiffs opposed defendant's motion (ECF 26), to which defendant replied (ECF 27 and 28).

Defendant argues that plaintiffs' claims should be dismissed for the reasons that follow. First, all of plaintiff LaMarca's claims should be dismissed because he failed to file an administrative tort claim as required by 28 U.S.C. § 2675(a). Second, Counts I (trespass to chattels) and II (conversion) should be dismissed because the claims are time-barred by the FTCA's two-year statute of limitations, 28 U.S.C. § 2401(b); and because these claims are barred by the FTCA's detention of goods exception, 28 U.S.C. § 2680(c). Third, Counts III (malicious prosecution) and IV (retaliatory prosecution) should be dismissed because Ohio does not recognize a state law tort for retaliatory prosecution; these counts are subject in part to the FTCA's intentional tort exception, 28 U.S.C. § 2680(h); and probable cause was established conclusively by the issuance of a grand jury indictment.[1] And, fourth, Count V (intentional infliction of emotional distress) should be dismissed because Count V is based exclusively on the claims and allegations raised in Counts I - IV, it should be dismissed for all the reasons that Counts I - IV should be dismissed.

---

[1] ECF 25-2.

APPLICABLE LAW AND ANALYSIS

A.        Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on the basis that the court lacks subject matter jurisdiction. When subject matter jurisdiction is challenged, the party asserting jurisdiction bears the burden of establishing that subject matter jurisdiction exists.  *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990); *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n.*, 287 F.3d 568, 573 (6th Cir. 2002).

A Rule 12(b)(1) motion may take the form of a facial challenge or a factual challenge. A facial challenge merely questions the sufficiency of the pleadings. A factual attack challenges the veracity of the factual basis for subject matter jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir. 1996); *Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990);

Rule 12(b)(1) facial attacks to subject matter jurisdiction challenges the sufficiency of the pleadings.  In such cases, courts apply the Rule 12(b)(6) standard and the court must accept the alleged facts to be true and determine if those facts are sufficient to state a claim for relief that is plausible on its face. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1996); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  However, even on a motion to dismiss for failure to state a claim (Rule 12(b)(6)), there are certain documents that a court may consider without converting a motion to dismiss for summary judgment. Such documents include "'matters of public record, orders, items appearing in the record

of the case, and exhibits attached to the complaint,' as well as 'documents that a defendant attaches to a motion to a dismiss . . . if they are referred to in plaintiff's complaint and are central to her claim.'" *Washington v. Roosen, Varchetti & Oliver, PPLC*, 894 F. Supp 2d 1015, 1030 (W.D. Mich. 2012) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Unlike a Rule 12(b)(1) facial challenge, when the facts underlying subject matter jurisdiction are challenged the court does not presume that those factual allegations are true, and may look beyond the pleadings and weigh competing evidence to determine if subject matter jurisdiction exists without converting the Rule 12(b)(1) motion to a motion for summary judgment. *See Ohio Nat's Life Ins. Co., v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *RMI Titanium Co.*, 78 F.3d at 1143.

B. Rule 12(b)(6)

In order to survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, plaintiff must allege facts which, if accepted as true, "raise a right to relief above the speculative level" and "state[s] a claim to relief that is plausible on its face." *Hensley Mfg v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In order to be plausible, plaintiffs must plead facts that permit a reasonable inference that defendant is liable for the alleged conduct. *Ashcroft*, 556 U.S. at 677. The Court must accept as true all well-pleaded factual allegations, but does not accept as true legal conclusions couched as factual allegations. *Twombly,* 550 U.S. at 555.

13

C. <u>Federal Tort Claims Act</u>

Pursuant to the doctrine of sovereign immunity, the United States is immune from suit unless it consents to be sued. *Jackson v. United States*, 751 F.3d 712 (6th Cir. 2014). A plaintiff's right to sue the United States is limited to the terms of its consent to be sued. *See United States v. Testan*, 424 U.S. 392, 399 (1976).

One of the terms of the United States' consent to suit pursuant to the Federal Tort Claims Act is that a claimant must first present his claim to the appropriate federal agency and the claim must be denied by the agency before a claimant can sue the government in court. 28 U.S.C. §2675(a). Presenting the claim to the appropriate federal agency before filing suit against the government under the Federal Tort Claims Act is a jurisdictional prerequisite to filing a FTCA action in federal court. *Rogers v. United States*, 675 F.2d 123, 124 (6th Cir. 1982). The Supreme Court has "frequently held . . . that a waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Dep't of the Army v. Blue Fox, Inc.,* 525 U.S. 255, 260 (1999).

The claim is "presented" when the federal agency receives the claim. 28 C.F.R. § 14.2(a). It is plaintiff's burden to establish that the federal agency's receipt of the claim. *Moya v. U.S.*, 35 F.3d 501, 504 (10th Cir. 1994).

In this case, the federal agency to which plaintiffs must present their claims before filing a lawsui is the United States Department of Education. The DOE's FTCA regulation for filing administrative claims (34 CFR § 35.2) provides as follows:

> (a) For the purposes of the regulations in this part, a claim shall be deemed to have been presented when the Department of Education receives, at a place designated in

14

>paragraph (b) [sic] of this section, and executed Standard Form 95 or other written notification of an incident accompanied by a claim for money damages in a sum certain for damage to or loss of property, for personal injury, or for death, alleged to have occurred by reason of the incident . . . .
>. . . .
>(c) Forms may be obtained and claims may be filed, with the Department of Education Claims Officer, Washington, DC 20202.

    D.    <u>LaMarca has not established subject matter jurisdiction</u>

The government contends that LaMarca's FTCA claims (Counts 3, 4 and 5)[5] should be dismissed because he has not filed an administrative claim with the DOE and therefore failed to satisfy the jurisdictional prerequisite required to bring his FTCA claims to federal court as required by 28 U.S.C. § 2675(a). Plaintiffs' third amended complaint alleges that LaMarca filed an administrative claim with the DOE, but the government challenges the underlying facts of LaMarca's claim that this court has subject matter jurisdiction. It is LaMarca's burden to establish subject matter jurisdiction. To carry that burden in this case, LaMarca must establish that the DOE received his administrative claim.

LaMarca alleges in the complaint that he filed an administrative claim, however, the DOE has advanced affidavit testimony that the DOE has searched and there is no record of an administrative claim filed by LaMarca. ECF 25-2. The record reflects that the DOE received one of the claim packages on August 1, 2011 that was sent on July 29, 2011. However, LaMarca cannot establish whether the claim received was LaMarca's claim or the Schools' claim. Even if the Court were to conclude that proof of delivery to

---

[5] Plaintiffs' brief in opposition to defendant's motion to dismiss reflects that counts 3, 4 and 5 were

the DOE's main mailroom was sufficient to satisfy the statutory requirements, notwithstanding the misdirection and apparent loss of that package within the DOE, LaMarca has not established that the administrative claim in the FedEx packaged received by the DOE was LaMarca's claim or what that claim consisted of.

For these reasons, the Court finds that LaMarca cannot demonstrate that the DOE received his administrative claim. As a consequence, the Court concludes that LaMarca has not carried his burden of establishing the Court's subject matter jurisdiction over his FTCA claims asserted in Counts 3, 4 and 5. Accordingly, Counts 3, 4 and 5 of plaintiffs' complaint are dismissed for lack of subject matter jurisdiction.

E.    The Schools' trespass to chattels and conversion claims (Counts 1 and 2)[6]

The United States contends that the Schools' FTCA claims for conversion and trespass to chattels are barred by the FTCA's two year statute of limitations.[7] Compliance with the time limits of section 2401(b) is jurisdictional. *Blakely v. U.S.*, 276 F.3d 853, 865 (6th Cir. 2002). The Schools' complaint alleges that the conversion and trespass claims accrued when the Schools' records were seized – in October 2003. The Schools' administrative claim was not filed until July 28, 2009 – almost five years later – which the government argues falls outside the FTCA's two year statute of limitations. The Schools now contend, however, that their claim did not accrue until October 16, 2008, the date Marc LaMarca was acquitted of his criminal charges, and that pursuant to the provisions of 28 U.S.C. § 2679(d)(5), the Schools' claim was timely filed.

---

brought on behalf of plaintiff LaMarca only, and not on behalf of the Schools.

[6] Plaintiffs' opposition to defendant's motion to dismiss reflects that Counts 1 and 2 are brought on behalf of the Schools' only, and not on behalf of LaMarca.

[7] 28 U.S.C. § 2401(b) provides that: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . .."

Defendant United States also argues in support of its motion that Counts 1 and 2 are barred by the FTCA's detention of goods exception, 28 U.S.C. § 2680(c), and therefore subject to dismissal pursuant to Rule 12(b)(6).  This exception to the FTCA bars "any claim arising in respect of . . . the detention of any goods, merchandise, or other property by any . . . law enforcement officer . . . ."   The Court agrees.  Even if the Schools' claims were timely filed, the Schools' trespass and conversion claims are barred by the FTCA exception found at at 28 U.S.C. 2680 (c).

The detention of goods exception has been broadly interpreted.  The phrase "arising in respect of" has been broadly interpreted to mean "any claim arising out of."  *Kosak v. United States*, 465 U.S. 848, 854 (1984). Detention by "any law enforcement officer" has also been broadly construed. *Ali v. Bureau of Prisons*, 128 S.Ct. 831 (2008).  "Detention" likewise has been broadly construed to include negligent handling, storage, and loss of detained property. *See Kosak v. United States*, 465 U.S. at 852-54.  Section 2680 (c) applies not only to damage to the seized property itself, but to other injuries arising out of the detention, including consequential damages. *Id.* The broad construction of the detention of goods exception to the FTCA is a reflection of the principle that the scope of the waiver of sovereign immunity is narrowly construed in favor of the sovereign.

Count 1 of the Schools' complaint for trespass alleges that the Schools' trespass claim accrued when Pawlak and Greenblatt entered the Schools' property and seized the records.  Count 2 of the Schools' complaint for conversion alleges that the Schools' conversion claim accrued when Pawlak and Greenblatt entered the Schools' property and seized the records and failed to return the records for a number of years,

17

ultimately returning only a small portion of the records. According to the complaint, the Schools' property was seized in October, 2003. ECF 1, par. 102 and 105.

Although the Schools allege in the complaint that the conversion and trespass causes of action accrued upon Greenblatt and Pawlak's seizure of the School's property in October, 2003,[8] the Schools' argue in opposition to defendant's motion to dismiss that their conversion and trespass claims did not accrue until LaMarca's acquittal. The factual premise for the Schools' argument that the trespass and conversion claims were filed within the FTCA's statute of limitations conflicts with the factual allegations of the trespass and conversion claims in the complaint.

In their opposition to defendant's motion to dismiss, the Schools concede that the government had a reason recognized by law to hold the Schools' records until the date LaMarca was acquitted on October 16, 2008. ECF 26, p. 29.[9] After LaMarca was acquitted, the Schools contend that their trespass and conversion claims accrued.

As the Schools essentially concede, the FTCA's detention of goods exception clearly applies to the detention of the Schools' records at least through

---

[8] The Schools' administrative claim also alleges that the trespass to chattels claim is based on the agents' entry on the property and seizure of the records in October 2003 in connection with the criminal investigation of LaMarca, and the conversion claim is based on the agents' failure to return the seized records which, the administrative claim states, were "presumably lost or destroyed." ECF 25-2.

[9] "The earliest time at which causes of action for conversion and trespass to chattels could have accrued on behalf of the Schools was October 16, 2008, the date upon which Marc LaMarca was acquitted of federal charges . . . , as prior to that time the government claimed to have seized the Schools' files to be used in the criminal investigation and eventual criminal trial of Mr. LaMarca. Whether or not that was the true reason for the seizure, or the only reason for the seizure, the government's retention of the files as potential evidence in the criminal case . . . was not a basis upon which the Schools could bring a civil action for conversion and trespass to chattels until the criminal case had ended, as prior to that time, the government had a reason which is recognized under the law to hold the property." ECF 26, p. 29.

LaMarca's acquittal.[10] However, the FTCA's detention of goods exception is not limited to the time period for which the property has evidentiary value. A cause of action arising out of the detention of the Schools' records by federal law enforcement officers is barred by § 2680(c) even if the property is not returned after the seized property no longer has evidentiary value. *See e.g.*, *O'Ferrell v. United States*, 253 F.3d 1257, 1271 (11th Cir. 2001). Further, the scope of the detention of goods exception is broadly construed and applies to the loss, theft, or negligent handling of the seized property during detention. *Kosak v. United States*, 465 U.S. at 852-54.

The Schools cite *Reynoso v. San Francisco* for the proposition that the detention of goods exception does not apply when law enforcement officers have no legal reason to hold seized property. *Reynoso v. San Francisco,* 2012 WL 646232 (N.D. Cal. Feb. 28, 2012). However, the facts of *Reynoso* are very different from the facts of this case.

In *Reynoso*, plaintiffs alleged that the defendants took $200,000 in cash from their home without asserting that they were taking the cash into custody or reporting that the cash had been seized, in effect, essentially claiming that the defendants stole the property. *Id* at * 4. In this case, the Schools' records and property were seized and taken into custody upon execution of a warrant issued in connection with a criminal investigation of LaMarca. The Schools do not allege that Greenbalt and Pawlak did not make an inventory of the seized records, that the Schools' records were not used as part

---

[10] The Schools' admit in the complaint that after LaMarca was acquitted, 75 boxes of records were returned. However, the Schools allege that the 75 boxed do not contain all of the records that were seized. ECF 1, par. 98 and 99.

19

of the government's criminal investigation of LaMarca, or that the Schools' records were stolen by Greenblatt and Pawlak.

The detention of goods exception to the FTCA is broadly construed by the courts in favor of the sovereign. The Schools' claims for trespass to chattels and conversion arise from the seizure and detention of the Schools' records and property in connection with the criminal investigation of LaMarca. Accordingly, the Court concludes that the detention of goods exception to the FTCA, 28 U.S.C. § 2680(c), precludes the Schools' claims for trespass and conversion, both before and after LaMarca's acquittal. Accordingly, Counts 1 and 2 of the plaintiffs' complaint is dismissed with prejudice.

## CONCLUSION

For the reasons set forth herein, defendant's motion to dismiss plaintiffs' complaint, brought pursuant to the Federal Tort Claims Act, is GRANTED. Plaintiffs' complaint is dismissed with prejudice.

IT IS SO ORDERED.

July 22, 2014　　　　　　　　　　　　　　　　s/David D. Dowd, Jr.
Date　　　　　　　　　　　　　　　　　　　　U.S. District Judge